Wesley STEPHENS et al., Appellants,

v.

Clifford H. MENDENHALL et al., Appellees.

No. 15669.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 13, 1956.

Rehearing Denied Feb. 17, 1956.

Clyde Suddath, Henrietta, Ronald D. Stephens, Graham, Nelson & Sherrod and Eugene Sherrod, Jr., Wichita Falls, for appellants.

Vincent Stine, Henrietta, Peery & Wilson and Bob L. Wilson, Wichita Falls, for appellee Mendenhall.

Burford, Ryburn, Hincks & Ford and H. Sam Davis, Jr., Dallas, Texas, for appellee Texas Employers' Ins. Ass'n.

MASSEY, Chief Justice.

From a judgment for common-law damages in behalf of the plaintiff and insurance company intervenor (under subrogation provisions of the Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq.) against third party tort-feasor defendants—the defendants appeal. Total amount of damages awarded was $73,219.54.

Judgment affirmed.

Defendants Wesley Stephens and Morris Stephens were partners in the oil field trucking business, doing business as Stephens Trucking Company. Hayden Farmer was a drilling contractor engaged in oil field operations. Employed by the Stephens Trucking Company was truck driver Roy Radcliffe. Employed by the Hayden Farmer Drilling Company was Clifford H. Mendenhall, the plaintiff. The employees of Hayden Farmer, including the plaintiff, were covered for workmen's compensation insurance benefits by the intervenor Texas Employers' Insurance Association. On or about date of March 29, 1954, plaintiff was working on a location from which Hayden Farmer was moving a drilling rig and equipment. Farmer had contracted with the Stephens Trucking Company for several trucks, truck drivers, and "swampers", to move the rig and equipment. The contract was informal in character and in most general terms, Farmer having notified one of the Stephenses that he was moving the rig and equipment and he needed about ——— trucks. It is customary in the oil fields of the vicinity in question for the employees of the drilling operators to work cooperatively with the employees of the trucking contractors in loading the rig and equipment on the trucks and trailers used in the operation, with the employees of the latter doing the actual transporting by the operation of the trucks.

Some of the trucks were larger than others. All were the type which towed a semi-trailer, and all had a winch line fitted on a power operated reel attached to the truck-tractor. One of the trucks was operated by Radcliffe, who did not have a "swamper" to help him. Relatively speaking, his tractor and trailer was what is called a small truck. At the time of the casualty with which we are concerned, his was the only truck located on the premises from which Hayden Farmer's rig and equipment was being moved. The moving operation was nearing completion, and Radcliffe was preparing to load the "dog house" on his trailer. The "dog house" is a small portable building ordinarily located at a drilling rig when it is in operation. It furnishes a place for the drilling crews to change their clothing, leave their lunches, etc., and other purposes of general utility. In loading a "dog house" a trailer is usually disconnected from the tractor, the front end of the trailer dropped to the ground, and the "dog house" partially lifted and partially skidded along the ground and up onto the trailer. The trailer is then lifted by the winch on the tractor to the proper height for re-connection therewith and the connection made, whereupon the transporting operation may be effected. The truck driver, Radcliffe, was engaged in the operation of disconnecting the trailer from the tractor to lower it to the ground when the injuries to the plaintiff occurred. He had released the

operating connection, known as the "fifth wheel", and had moved the tractor forward away from the trailer a sufficient distance to cause the front end of the trailer to be balanced on a "rocker" immediately aft the "fifth wheel". Ordinarily at this state of the disconnecting process the winch line running from the front of the trailer onto the reel at the rear of the tractor is taut, or near-taut, so that after disconnecting the brake line cable running from the tractor to the rear wheels of the trailer, the trailer can be lowered to the ground without severing or damaging this cable. With the brake line disengaged, the tractor can be driven forward a few inches to permit the front end of the trailer to "clear" the "rocker" and be in position to be lowered to the ground by use of the winch line. At least that is the case, and is necessary in connection with equipment which uses "air brakes", for when such brakes are disconnected by removing the brake line from the tractor, the trailer wheels lock through an automatic process which "freezes" the trailer wheels. In any event, that appears to be the mechanical process from the evidence in this case. In the case of electric brakes, the movement of a sufficient number of inches to move the trailer off the "rocker" can be made in the same manner as above described, or by manually moving the trailer backward, for the trailer wheels are free of brake tension upon the disconnection of electric brakes. In the present instance, the truck and trailer were equipped with electric brakes, and the rear wheels of the trailer were on a "hump" or a slope whereby, upon the disconnection of the brake line, the freedom of movement of the trailer wheels permitted it to roll backwards a sufficient distance to cause the front end of the trailer to "clear" the "rocker".

Therein lies a basic reason why the casualty resulting in plaintiff's injuries occurred. The plaintiff was observing the operations engaged in by the truck driver. Upon adequate evidence to be found in the record, it was found by the jury that Radcliffe asked the plaintiff to disengage the brake cable or brake line. The plaintiff immediately responded and moved his body, or a portion thereof, under the front end of the trailer in so doing. When the disconnection was effected, the trailer immediately moved backward, no doubt because of the "hump" or slope above mentioned, permitting the trailer to "clear" the "rocker". The winch line was not taut or near-taut, and as the weight of the trailer body struck such line as it dropped toward the ground upon "clearing the rocker", the line was pulled taut. However, in the drop of the trailer its undercarriage struck the plaintiff, injuring him most severely.

Plaintiff's injuries were of such severity and permanence that the Texas Employers' Insurance Association paid total and permanent benefits in a lump sum, plus over five thousand dollars in connection with medical services made necessary because of the injuries. In connection therewith is established the position of the plaintiff in that he contends that he was the employee of Hayden Farmer Drilling Company at the time of his injuries, acting within the scope and course of his employment, for it was as the workmen's compensation insurance carrier for such employer that Texas Employers' Insurance Association made the payments. As applied to the defendants this fact, of which plaintiff and the intervenor must necessarily contend with reference to plaintiff's employment at the time of his injuries, has no binding effect. The defendants could, and did in this case, contend that at the time he sustained his injuries plaintiff was a volunteer helper, gratuitously rendering services to them and their servant truck driver, or, in the alternative, was their employee. In connection with such alternative, the defendants showed that they carried workmen's compensation insurance upon their employees and that therefore they were relieved by statute of any common-law liability for plaintiff's damages. The defendants' workmen's compensation was carried by the Texas Employers' Insurance Association, but in this case that fact would have no different effect from that which would be the case had it been a company which was a complete stranger to the proceedings on trial.

The jury found that plaintiff was an employee of Hayden Farmer Drilling Company, and that he was acting for and in the furtherance of his employer's interests at the time he sustained his injuries.

■ We note that the law in some jurisdictions would so operate that under similar circumstances to those here presented a defendant in a tort action would be entitled to defeat a plaintiff's recovery by showing that he carried workmen's compensation insurance upon his employees, and/or by showing that the primary principal carried similar insurance and that the insurance benefits had been paid to the plaintiff. 58 Am.Jur., p. 614, "Workmen's Compensation", sec. 57 and notes 17.5 and 18; Adams v. Hercules Powder Co., 180 Tenn. 340, 175 S.W.2d 319, 151 A.L.R. 1359; Sweezey v. Arc Electrical Const. Co., 295 N.Y. 306, 67 N.E.2d 369, 166 A.L.R. 813; Capetola v. Barclay-White Co., 3 Cir., 1943, 139 F.2d 556, 153 A.L.R. 1046. Nevertheless, it seems presently to be the settled law of this state, notwithstanding the nature of the provisions of the Texas Workmen's Compensation Act, that a third person (not within the relationship to him as an employee under the provisions of said Act) may maintain an action for common-law damages for injuries sustained as the result of the negligence of himself or his servant even when such third person's injuries were sustained while rendering service to him in identical manner as would his own employee, and even though he has procured workmen's compensation insurance in accordance with the Act's provisions. Harbour v. Graham Mfg. Co., Tex.Civ.App. Texarkana, 1932, 47 S.W.2d 700, writ dismissed; 45 Tex.Jur., p. 379, "Workmen's Compensation", sec. 17, "Independent Contractor as Third Person".

■ There is no dispute between the parties upon the matter of Radcliffe's agency for the defendants at the time of plaintiff's injury. The jury found that he was defendants' employee at the time, and that he was acting in the scope of his employment and in furtherance of the interests of his employers. The principal question on appeal is the legal status of the plaintiff. We must view the question exactly as it would have been viewed prior to the enactment of the Texas Workmen's Compensation Act, and as though the plaintiff had elected in the first instance to proceed solely against the defendants for the damages he sustained. The fact that plaintiff was found by the jury to have been the employee of Hayden Farmer at the time of his injury, acting within the scope and course of his employment, is important in that the jury's finding establishes the fact that plaintiff's act in "helping" the defendants' employee was rendered in furtherance of the business and affairs of his employer, rather than rendered by him as a "mere" volunteer. The finding in this regard was supported by the evidence within the requisites of the case distinguishing actions of service for general employers and for special employers. The plaintiff also established that he did not become defendants' employee, but that he was still in the general employment of Hayden Farmer at the time he was performing a function in the nature of "special employment" for the defendants. See Insurors Indemnity & Insurance Co. v. Pridgen, 1949, 148 Tex. 219, 223 S.W.2d 217, 220; Tanner v. Drake, Tex.Civ.App. Eastland, 1932, 47 S.W.2d 452, affirmed in 124 Tex. 395, 78 S.W.2d 162; Stallcup v. United Gas Public Service Co., Tex.Civ.App. Fort Worth, 1938, 119 S.W.2d 574, writ dismissed, and cases there cited. See Restatement of the Law, Agency, under sec. 227. The plaintiff did not become the servant of the defendants in performing the immediate service for them. There is no evidence in the record indicating that he ever submitted himself to the defendants in so far as the control of the details of his performance of acts was concerned. Restatement of the Law, Agency, sec. 220, and comments under subsection 2 of the section; 35 Am.Jur., p. 802, "Master and Servant", sec. 378. Even had there been some specific agreement between Hayden Farmer and the defendants concerning the loan of plaintiff's services to defendants, rather than the mere proof of custom which was shown in the record, the situation would not be altered unless plaintiff was

placed on notice that he was to work under the control (as to details) of the defendants. Restatement of the Law, Agency, sec. 476, and the discussion under comment "b" thereof.

There was no evidence that defendants' truck driver had any express authority to solicit the aid of the Hayden Farmer employees to do anything to help him while he was working around them. There was evidence that truck drivers in the vicinity of the accident customarily asked for help when it was needed and of the employees of any drilling operator whose rig and equipment was being moved. The jury found that it was customary in the area at the time for "roughnecks" (employees of drilling operators) to disconnect brake cables when requested to do so, by truck drivers. The defendants' truck driver asked the plaintiff to disconnect the cable on the instant occasion.

■ Plaintiff cast his case under the situation commented upon and illustrated by examples to be found in Restatement of the Law, Agency, sec. 485. It is there demonstrated that when a volunteer, solicited for aid in the performance of some function by a solicitor (who has express or implied authority to solicit his aid), acts in the promotion and furtherance of the interests of the solicitor's principal, he nevertheless may impose liability upon such principal should he sustain injury through the negligence of the principal or the principal's agent, *if he manifests that he is acting for his own benefit, or that of his own principal or employer, rather than seeking primarily to promote the interests of him whom he attempts to aid.* The examples under the section illustrating the principle are informative. Comments and examples in support of the same principle are to be found under section 476 of the same Restatement relating to the special risks of employees of different masters working on the same job. Some of the examples were obviously taken from cases cited by plaintiff in his brief. That this principle is the accepted law in our jurisdiction is apparent from the following cases: Eason v. S. & E. T. Ry.

Co., 1886, 65 Tex. 577, 57 Am.Rep. 606 (not to be found in Southwestern Reporter); Roy L. Jones Truck Line v. Johnson, Tex.Civ.App. Galveston, 1949, 225 S.W.2d 888, writ refused, n. r. e., which follows the case of Standard Oil Co. v. Anderson, 1909, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, among the annotations in 44 A.L.R. 1116, et seq.; Stallcup v. United Gas Public Service Co., supra; Tanner v. Drake, supra. Texts shedding light upon the question are Thompson on Negligence, Vol. 2, p. 1045; 56 C.J.S., Master and Servant, § 328, pp. 1091–1092, and § 177, p. 865; 35 Am.Jur., p. 803, "Master and Servant", sec. 379, and pp. 807–808, sec. 383.

Indeed, in Texas there has been no distinction made upon the technical question of whether the service tendered was primarily or secondarily or incidentally in his own or his general employers' behalf, or his state of mind in that regard. It seems that if the plaintiff in such a case can obtain a finding that the service so rendered was in furtherance of his own interest or that of his employer he is privileged to recover if he is not contributorily negligent. Eason v. S. & E. T. Ry. Co., supra.

Since the defendants had not instructed their employee Radcliffe not to request or permit anyone to aid him in disconnecting the brake cable, our opinion is not complicated by a consideration of what effect, if any, such an instruction would have upon the disposition of this case. Our holding is not to be construed to apply to or control a case in which such a circumstance does exist.

■ The defendants contend that upon the authority of Eason v. S. & E. T. Ry. Co., supra, and other cases of analogy, that not only must the work undertaken by a plaintiff be that, the performance of which inures to the benefit of himself or his master,—but that coupled therewith must be the necessity for his undertaking to perform the work because of an emergency or because of the inability of the defendant and his servants to otherwise proceed for want of the presence of sufficient personnel. It is true that at one part of the

opinion in the Eason v. S. & E. T. Ry. Co. case it is stated that "* * * . The act he (the plaintiff) was performing was not only a prudent and reasonable one, but absolutely demanded by the circumstances. The coupling was necessary to the removal of the car to a proper position, and the company had not sufficient brakemen to perform the duty at the time." At another point in the opinion it is stated that the place where the car was placed for the purpose of being loaded by plaintiff's employers "* * * was so located that it could not be conveniently loaded, * * *", and that its removal to a better location was a matter of interest to the plaintiff's employers. The language we have first quoted seems to contradict that thereafter quoted, but the language first quoted is in our opinion descriptive only, not even constituting dicta as applied to the law. We do not believe that any requisite to the establishment of liability in the circumstances is dependent upon either an emergency justifying the enlistment of the plaintiff's aid, or upon an inability to proceed but for the enlistment of his service. Only in the event of somewhat analogous circumstances to those existent in the case of Stallcup v. United Gas Public Service Co., supra, where the plaintiff had thrust his services upon the defendant unsolicited and also in violation of instructions not to participate in the work, would a plaintiff be required to show such additional circumstances as a precedence to any right of recovery.

In view of what we have said, defendants' first four points must be overruled. Plaintiff may recover because he has obtained a finding that his act was in furtherance of his own employer's interest, even conceding that it was voluntary rather than pursuant to normal requirements of his regular employment. He was not an employee of the defendants.

■ By special issues submitted and answered, the jury found the defendants' truck driver negligent in the following particulars: (1) failing to have the winch line under proper control, and (2) permitting too much slack in the winch line under the existent circumstances. The defendants contend that the trial court erred in submitting special issues upon these questions, and subsequently refusing to disregard the answers returned by the jury, on the ground that the testimony in the record, in law, constitutes no evidence of probative force and effect, or alternatively insufficient evidence to support the findings and verdict thereupon based. We believe that there was sufficient proper evidence of probative force, under plaintiff's pleadings, to support the verdict in this regard and the judgment based thereupon. In view thereof, other special issue findings submitted upon the plaintiff's theory of res ipsa loquitur are unnecessary of discussion, for defendants' contentions in regard to the propriety of special issue submission and answers returned based upon that theory would become moot. Defendants' points 16 to 23, inclusive, are therefore overruled.

Defendants complain on appeal because numerous special issues requested by them were refused by the court. Some of the issues so specially requested are as follows: (1) whether the operation of lowering the trailer was work defendants had obligated themselves to do, or whether it was work Hayden Farmer (plaintiff's employer) had obligated himself to do; (2) whether plaintiff was engaged in the lowering operation at time of his injury; (3) whether defendants' truck driver had authority to enlist plaintiff's assistance to disengage the brake cable; (4) whether plaintiff had some control over the movements of the trailer. The defendants have brought forward on appeal their complaints in the trial court relating to its refusal to submit such inquiries to the jury.

■ We are of the opinion that the trial court did not err in failing to submit any of these specially requested issues. It would be immaterial to the resolution of any material question whether defendants' truck driver had authority to enlist plaintiff's assistance in the operation of disengaging the brake cable and it is undisputed that plaintiff was disengaging the cable so that the trailer float could be low-

ered. Of course, if the plaintiff's employer was obligated to control the movements of the trailer and its lowering and raising, it might be said that defendants' truck driver was assisting plaintiff and Hayden Farmer rather than the converse. Whether this would have altered the legal situation here obtaining would then be necessary to consider. But we are of the opinion that there is no dispute in the evidence that at all material times the defendants were independent contractors, that their truck driver was acting within the scope and course of his employment by the defendants, that they were charged with the obligation of operating the trailer as well as the truck, including the raising and lowering of such trailer, and that neither plaintiff's employer nor any other of his employees was either obligated in connection with such an operation or privileged to exercise any control thereof different from that normal to the relationship of contractor and sub-contractor. In view thereof, defendants' points 7, 8, 9, and 25 are overruled.

By points Nos. 5 and 6 the defendants assign error because of the trial court's refusal of their specially requested issues inquiring whether or not plaintiff rendered his assistance in the disengaging of the brake cable as a volunteer helper and only as an accommodation to the truck driver. It will be observed from an examination of Stallcup v. United Gas Public Service Co., supra, and the cases therein cited on page 577 of 119 S.W.2d of the opinion, that if the plaintiff rendered his assistance only as an accommodation to the truck driver or to the defendants, then his voluntary act could at most entitle him to be classed as a fellow servant to defendants' truck driver. Perhaps, he would not be properly classified in a group so legally favored. We can readily see that a plaintiff might allege that he was injured because of a defendant's negligence,—then the defendant would show, through an allegation in the nature of a confession and avoidance, that conceding what the plaintiff has alleged to be the truth he may not recover because he was injured pursuant to the rendering of assistance to the defendant in the performance of an operation being engaged in by him. If the plaintiff can allege, in reply, also in the nature of confession and avoidance, that conceding all that has gone before to be true, the act of assistance rendered by him was in connection with the performance of a service beneficial to both the defendant and plaintiff (or his employer) and at the request or with the acquiescence of the defendant, then he has plead a sound cause of action,—and if the proof and verdict of the jury bear out the contentions, plaintiff is entitled to recover. The principle of law is evidenced by what we have said before, and is most plainly set out by Chief Justice Willie in the case of Eason v. S. & E. T. Ry. Co., supra.

In the instant case the defendants were certainly entitled to have determined the question of whether the assistance tendered by the plaintiff was rendered only as an accommodation to the defendants. It is to be remembered that plaintiff did not thrust his services upon the defendants unsolicited or in violation of instructions not to participate. The jury found that the truck driver asked that he perform the act pursuant to which he was injured. The jury found that plaintiff at all times was the employee of Hayden Farmer, acting within the scope of his employment. *"Scope of Employment"* was defined to the jury as meaning that *"an employee is engaged in doing for his employer either the act consciously and specifically directed, or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the act, or a natural, direct and logical result of it. The act must be done in furtherance of the employer's business and for the accomplishment of the object for which the servant was employed."* (Emphasis added.)

The defendants objected to the nature and wording of the special issues upon the question of injury in the scope of employment as applied to the plaintiff, but they did not bring forward by any point on appeal their complaints in this regard. We have already discussed the effect of the jury's findings that the plaintiff was Hayden Farmer's employee, and was acting in

the furtherance of his employer's interest at the time of his injury. That his act was in furtherance of such employer's interest was the jury's finding when it found that the plaintiff was acting within the scope of his employment by Farmer. With the definition of the term necessarily embodied in the question posed by the issues, the jury was charged that it must find the plaintiff's act to have been performed in furtherance of Farmer's interest in order to return the answer that the act was within the scope of his employment. There was no complaint of the court's definition of "Scope of Employment". Under points 5 and 6, defendants state that the jury findings in answer to the special issues would have nothing to do with the question of whether or not plaintiff was a volunteer. They say that an employee can be acting within the scope and course of his employment while at the same time he could be a trespasser as to a third person. We can concur with the statement of law. Defendants argue further relative to the fact that a person can be a general servant of one employer and at the same time the special servant of another; however, we need not discuss this contention in view of what we have already said in the discussion wherein we arrived at the legal conclusion that the defendants' contentions based upon this theory are without merit.

In view of the state of the record before us, we must disagree with the defendants that the special issue findings that plaintiff was acting within the scope of his employment by Hayden Farmer, and (in view of the definition of the term "Scope of Employment") acting in furtherance of the interests of such employer's business and for the accomplishment of the object for which the servant was employed, are without force and effect. Rather do we conclude that these answers find plaintiff to have been performing the act of service to defendants' truck driver, not only at his request, but also in connection wtih the performance of a service beneficial to his own employer, Hayden Farmer, and for the purpose of furthering his employer's business interests. If the plaintiff was doing this,

then he could not have been acting as a mere volunteer or solely in accommodation of defendants' truck driver. Furthermore, by its answer the jury found that the plaintiff performed the act in furtherance of his own employer's interests, a finding the burden of obtaining which would be cast upon the plaintiff only were it factually found that the act was performed pursuant to the performance of an operation engaged in by the defendants. It therefore appears that plaintiff conceded facts casting the burden upon him and submitted an issue, answer to which would determine his legal status. The jury having issues submitted to it in form which properly placed the burden upon the plaintiff, answers to which would establish the plaintiff's status in the sense material to the case, the court could not by us be considered to have prejudiced the defendants in refusing their specially requested issues. Obviously the trial judge was of the opinion that the charge given by him embraced the inquiry of the requested issues. We believe that the trial court was correct in its refusal, concurring in the opinion that defendants' theory of defense was already in the charge. See Speer's Special Issues, sec. 260. The defendants' points 5 and 6 are overruled.

By point numbered 24, the defendants contend that the trial court erred in refusing their specially requested issue inquiring whether or not the act of plaintiff in releasing the brake cable while he was underneath the trailer was the sole proximate cause of his injuries. The point is overruled. We are of the opinion that defendants were not entitled to have the issue submitted. All the proper contributory negligence issues made by the pleadings and evidence were submitted to the jury, and by answers returned thereto the plaintiff was acquitted of negligence. There is no claim that any extraneous happening or force, as by an act of a third party, played any part in the occurrence whereby the plaintiff's injuries were sustained. In view thereof, the issue of "sole proximate cause" could not arise. International-Great Northern R. Co. v. Acker, Tex.Civ.App. Eastland, 1939, 128 S.W.2d 506, writ dismissed, judg-

ment correct; Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App. Austin, 1949, 221 S.W.2d 936, writ refused, n. r. e.; Sunset Motor Lines v. Blasingame, Tex.Civ.App. Dallas, 1951, 245 S.W.2d 288, writ dismissed.

By point numbered 14, the defendants claim that the trial court erred in failing to grant them a new trial because counsel for the plaintiff argued and suggested to the jury improper matters as measures of damages. During the course of the trial plaintiff testified that though prior to the occasion of his injuries he had been able to have normal (sexual) relations with his wife, his injuries and the paralysis attendant thereto had affected him to the extent that he could no longer have such relations, and that this fact has been a source of considerable embarrassment to him. During the course of the argument upon the matter of mental pain and suffering, plaintiff argued, using language as follows:

"* * * He has two daughters. They might have wanted a son, but he can't ever have another one. That is mental pain and suffering, isn't it. The Court tells you that you have got to set a value on it every day that he lives. * * *"

This argument was not objected to at the time it was made and no bill of exceptions was taken to it until the amended motion for new trial was filed. Assuming that the argument did suggest a matter improper as a measure of damages, we are nevertheless of the opinion that the defendants were not relieved of any duty to object to the argument and to request appropriate instructions. The trial court could have removed the harmful effect of this argument with an instruction to the jury, and therefore defendants waived any right to complain after the time had passed within which the court could have given an appropriate instruction. The possibility of injury must be measured by the relation of the argument to the entire case and to facts that are well known to the jury and which every intelligent person knows are in the minds of the jury, whether called to their atten-

tion or not. 41–B Tex.Jur., p. 344, sec. 285; Whitten v. Dethloff, Tex.Civ.App. Fort Worth, 1948, 214 S.W.2d 480. From evidence introduced before the jury, its members were aware that plaintiff no longer was able to have the normal sexual relations with his wife that he had previously enjoyed. A reasonable deduction from this testimony, and from other testimony relating to paralysis of the plaintiff's lower body, would be that plaintiff no longer had the power to procreate. No doubt the jury had concluded from the evidence that this was the case. Knowing, or strongly surmising this even without argument, the jury could know only by way of an instruction from the court of the impropriety of any consideration of damages accruing to plaintiff because of his possible disappointment in not being able to have a son. The charge did not contain a definition of mental anguish and no complaint was made because it did not. We are therefore of the opinion that defendants have waived any right to complain of the argument, and accordingly overrule the point of error. Church v. Pagenstecher, Tex.Civ.App. San Antonio, 1937, 104 S.W.2d 72, writ dismissed; Ramirez v. Acker, 1940, 134 Tex. 647, 138 S.W.2d 1054; and the text and cases under 41–B Tex.Jur., p. 346, sec. 287 et seq.

A fair analysis of the defendants' remaining points, save and except their point based upon the contention that the amount of the verdict was excessive, can only be made with the review of the peculiar circumstances attendant to the trial. The defendants were insured in relation to the liability plaintiff seeks to impose upon them by the Employers Casualty Company. The Texas Employers' Insurance Association was the compensation carrier for Hayden Farmer. The latter named company had paid to and in behalf of plaintiff some $14,-879.54, all as provided under the Texas Workmen's Compensation Act. Texas Employers' Insurance Association was subrogated under the provisions of the Act to the extent of its expenditure. Since the defendants' liability insurance was carried by the Employers Casualty Company, this meant that Texas Employers' Insurance As-

sociation was vested with subrogation rights, collection of which (in money) would be from the Employers Casualty Company. The two companies are what is sometimes called "sister companies". In other words, the management personnel and also the operating employees are nearly all, if not all, employed to do work for both companies. While the taking of a sum of money out of the coffers of Employers Casualty Company and placing it in those of the Texas Employers' Insurance Association would in fact be no different from the same situation had the companies been strangers to one another, it is readily observed that under the circumstances the personnel (employed by and serving both companies) would find difficulty in distinguishing the situation from one in which a man shifts his pocketbook from his coat into his pants.

Had the companies been strangers, the liability carrier for the defendants would have had its investigators look into the facts of the plaintiff's accident with a view to determining the existing and prospective liability of the defendants and to attempt to settle any claim presented by the plaintiff against the defendants,—or failing this, to be prepared to defend against any suit brought by him against the defendants. At the same time, the compensation carrier for Hayden Farmer would have had its investigators look into the facts in order to determine the question of its liability and the extent and duration of the plaintiff's disability under the provisions of the Texas Workmen's Compensation Act, and with a view toward settlement or defense as good business indicated. At one and the same time, the investigators for the compensation carrier would have determined facts which would enable it to prosecute the plaintiff's claim against the defendants for common-law damages, to the extent of whatever amount it might be required to pay to or in behalf of the plaintiff under the Act, on account of that part of the plaintiff's claim which would be subrogated to it.

In the present instance, however, the "sister companies" had one claim department under a single claims manager, and only one investigation was made by their common investigator. Hence, it may be observed that this investigator was actually serving two masters with conflicting interests. However, from the purport of the record, he thought he was serving the interests of both masters, and that their interests would be best served by minimizing the likelihood of any recovery at common law against the defendants (and their liability carrier), and, failing this, by attempting to hold the amount of damages awarded against the defendants to as low a figure as possible. Of course, action directed to such an end normally constitutes action prejudicial to the compensation carrier in both respects, though in the present instance, since there was very little likelihood that common-law damages would be found below the amount the compensation carrier had paid, it undoubtedly could only have operated prejudicially in respect to the establishment of liability. In view of the fact that the plaintiff obtained the answers he desired from the jury, supporting a judgment against the defendants, it is obvious that plaintiff overcame any prejudice which might have otherwise been operative against him.

We have outlined the situation because the defendants have predicated points of error upon the action of the trial court in permitting a line of inquiry by counsel for the plaintiff, which, according to defendants, informed the jury that they were protected by liability insurance,—and upon the argument of plaintiff's counsel before the jury, wherein the defendants contend that the jury was further informed of the same fact. It is to be noted that no proof was introduced upon the hearing of the motion for new trial that the jury knew or considered that the defendants were protected by any insurance.

The insurance adjuster who investigated the facts and circumstances relative to the plaintiff's accident and injuries was one Price Smith. Mr. Smith works for both the Texas Employers' Insurance Association and Employers Casualty Company. Some of the matters he looked into would be of interest only to the one company or

the other, but most of such matters would be of interest to both. The jury was informed in so far as his efforts in behalf of the Texas Employers' Insurance Association were concerned, for they were apprised upon the trial that such company had made an investigation. The plaintiff was conducting the trial in such wise as to lay a predicate for a claim that the Texas Employers' Insurance Association had waived its subrogation rights because of a failure to cooperate with him in imposing liability upon the defendants, or because it was obstructing his own attempt to do so. Plaintiff was of the opinion that he should show the jury that the Texas Employers' Insurance Association was attempting to prevent a recovery by the plaintiff, as well as by itself, as against the defendants. He wanted to show that the investigation record and the statements therein, made and secured by the Texas Employers' Insurance Association, were in the possession of the defendants, and that they were conducting the trial benefited by information contained therein. Conversely, the defendants wanted to cause the jury to believe that their investigation and statements (in particular the statement from Radcliffe, the defendants' truck driver) were prepared by a "safety man" acting for them in connection with building an investigation file. Actually, only one statement had ever been secured from Radcliffe, and the statement was taken by Price Smith. Whether it was taken for the benefit of the defendants and the Employers Casualty Company, or for the benefit of the Texas Employers' Insurance Association, or for all of them, is not clear. However, counsel for the defendants had access to it. Plaintiff's counsel had not been permitted access to it. He had tried to get it from the Texas Employers' Insurance Association prior to the trial.

Prior to the beginning of the trial, the defendants filed and presented a Motion on Conduct of Trial to the court, in which a request was made, as follows:

"2. Defendants make known to the court that they have in their possession and in the possession of their attorneys certain statements made in connection with the investigation of this cause, some of which statements were taken by insurance adjusters and agents and these defendants here now request the court to instruct counsel for plaintiff not to inquire into the relationship of the persons taking the statements or their connections in any manner with these defendants and especially not to inquire into the matter of who the witness, Roy Radcliffe, has talked to or has made statements to or otherwise lead the jury to believe that an investigation has been taken by concerns or persons other than the defendants herein."

The trial court overruled the request so presented, but did sustain other requests presented in the same motion. Though appellants have predicated a point thereon, they have not briefed it, contenting themselves with a showing of the fact that an attempt was made to secure such instruction, as part of matter which is briefed relative to the argument of plaintiff's counsel to the jury. This argument was based upon answers elicited in cross-examination of witnesses upon the matter of the connection with the defendants of the investigator who took Radcliffe's statement. The court instructed plaintiff's counsel not to inject into the trial of the case the matter of liability insurance. In view of the court's action in overruling the request we have quoted, defendant's counsel instructed the witness Radcliffe to refer to the man who had taken his statement as a "safety man" acting for the defendants. The man who took the statement was Price Smith. In so far as an investigation was made by the Texas Employers' Insurance Association, Price Smith made the investigation.

In the cross-examination of Radcliffe, plaintiff's counsel asked questions which caused him to state that he had given a statement to the "safety man"; that he did not know such "safety man" before the time his statement was taken, though he had worked for the defendants for over six months and thought he knew all the other employees of the defendants; and

that one of the defendants brought the "safety man" out to see him and to take his statement. It is to be remembered that the jury was at all times informed that the Texas Employers' Insurance Association had caused an investigation to be made into the facts of the accident. Upon the adduction of evidence, plaintiff's counsel attempted to handle matters before the jury in such manner that defendants' counsel would produce the statement Price Smith had taken from Radcliffe, but he was not successful. He did handle matters in such a way as to make it appear to the jury that he was willing to deliver to the defendants the statements in his possession, taken in connection with an investigation of the facts in the plaintiff's behalf.

With this the background, plaintiff's counsel pointed out to the jury during his closing argument that he was being fair to the defendants in that he gave statements to them which were taken in plaintiff's behalf, and recalled that he had never been shown statements taken from the same witnesses in the course of another investigation. He indicated that he believed the statements to be in the defendants' investigation file. There had been no evidence, however, that these statements were taken in behalf of the defendants, the only general investigation shown to have been made having been made by the Texas Employers' Insurance Association. It was rather plainly indicated during the progress of the trial, however, that the plaintiff had not been given the benefit of such investigation file of the Texas Employers' Insurance Association. There was no doubt in the mind of the jury that the statement Radcliffe had given the "safety man" was in the possession of defendants' counsel. Plaintiff's counsel read a portion of Radcliffe's testimony which he had caused to be transcribed for the purpose. The portion was that relative to his giving a statement to a "safety man". Then he argued as follows:

"So you see, men, the truck driver gives a statement to a man that he is told was a safety man for Stephens Trucking Company. Then he says

frankly he wasn't any safety man at all. They told me wrong. He sat over there with me all day long and never showed me that statement.' He never said, 'Before a lawsuit was filed here is what you said.' Mr. Stephens, sitting here in the Court Room all day, several days, not a line, not a line about what was in that statement. * * *"

(Several pages of argument intervene here.)

"Now, there are just two things here. Somebody is wrong and somebody is right. Mendenhall had no reason to tell the jury that he went in there and unlatched the 5th wheel, and they say 'Oh, you don't even unlatch it.' That is exactly the words used, 'You pull forward and unlatch it.' 'How do you unlatch it?' 'You pull it.' That is what Wesley Stephens himself said. He wouldn't tell you what Radcliffe said. He didn't want anybody to know what his own truck driver said. Was he hiding something? I don't know. *But we know that that insurance man had a statement that they didn't show Radcliffe.*" (Emphasis added.)

Through means of a note passed to the court, the defendants' counsel requested permission at such time as the court would allow to make a full bill because of said argument, and to move for a mistrial. The court marked the instrument as "timely presented". The argument of plaintiff's counsel was continuing meanwhile. An associate of plaintiff's counsel noted the passing of the note to the court, and managed to approach the bench and read the message. He then moved to counsel who was arguing the case and whispered to him. Then counsel continued in his argument to the jury, as follows:

"Do you remember a moment ago when I was talking to you I said this. Texas Employers' Insurance man that called the Doctor down here, and he came down here, and he told you he could walk up and down stairs and it was all in his mind, and he said that—

"The truck driver also testified that he gave—the truck driver I am talking about now—testified he gave a statement the day after it happened. He gave it to a safety man for Stephens Trucking Company. He has never been shown it. If I said anything otherwise than a safety man, I was mistaken. He said it to a safety man for Stephens Trucking Company. And in that regard, let me say don't you discuss anything that didn't come from this witness stand, and don't you speculate and surmise, and if you didn't hear it in evidence here, and if it didn't come from this witness stand, don't discuss it because it is not in evidence and the jury can't discuss it, in that regard and in every other particular that I have mentioned."

 Upon the appeal, defendants' counsel contends, as in the trial court, that the argument was calculated to and did actually inject into the case in the closing moments of the trial the fact that there was insurance in the case, and that thereby the jury was led to believe that the defendants were covered by liability insurance, that the remarks were so prejudicial and inflammatory that no instruction from the court to the jury could remove their harmful effect from the minds of the jury, and that a mistrial should be declared.

Since the decision in the case of Aultman v. Dallas Railway & Terminal Co., 1953, 152 Tex. 509, 260 S.W.2d 596, it has been settled that Texas Rules of Civil Procedure, rule 434 applies to jury arguments, and that for a party complaining thereof to obtain a reversal, the argument must be shown to have been such as was reasonably calculated to cause and probably did cause the jury to return an erroneous verdict. The burder of so showing is cast upon the complaining party. In our opinion, no juror of ordinary intelligence would in this instance have been persuaded by the argument which was made to agree to a verdict contrary to that to which he would have agreed but for such argument. Goforth v. Alvey, 1954, 153 Tex. 449, 271 S.W.2d 404.

The jury knew that an investigation, including the taking of statements from witnesses, was made by the Texas Employers' Insurance Association. They knew that an investigation, including the taking of statements, was made by the plaintiff. They knew that an investigation, at least in so far as the truck driver was concerned, was made by the defendants. The truck driver's statement was apparently taken in behalf of the defendants, with one of the defendants present. In the heat of argument, it would be very likely that counsel could have gotten the identities of the various principals, in whose behalf the statements were taken, somewhat mixed. It would be as reasonable to believe that the jury thought this was what had occurred when counsel made the statements complained of as it would be to believe the converse thereof. Particularly would the jury be disposed to take this viewpoint when counsel later took occasion to correct his statement, and tell them that the statement he was talking about was that which was taken by the "safety man". For a good analysis of the considerations currently to be made in the examination of a record where an appellant claims prejudicial error because of the mention of insurance before the jury, see Roosth & Genecov Production Co. v. White, Tex.Civ.App. Texarkana, 1955, 281 S.W.2d 333, writ refused, n. r. e.

 It is to be noted that upon the motion for new trial there was no offer of evidence to the effect that the jury discussed the question of whether the "safety man" represented an insurance company, or that any of the jurors were caused to believe that the defendants were protected by some form of liability insurance, or that they were of the opinion that any insurance company other than Texas Employers' Insurance Association was interested in the outcome of the case. Therefore, should we consider that the statements of counsel were such as were reasonably calculated to cause the return of an improper verdict, yet we could not reverse the case because they were made, since we could not say that the statements probably did cause the jury to return an improper verdict. T.R.C.P. 434.

Poole v. State Highway Dept., Tex.Civ. App. Fort Worth, 1953, 256 S.W.2d 168, writ dismissed, w. o. j. The points are overruled.

■ The defendants have predicated their contentions upon the excessiveness of the amount of damages awarded upon the points dealt with above. They contend that the jury was informed that insurance protection was afforded the defendants and that the amount of the judgment, $73,219.54, being the largest ever returned in a damage suit in the county of the trial, would have been for a lesser amount had that not been the case. Of course, we necessarily had to consider this fact in passing upon the matter of erroneous argument. Defendants do not brief the point from the standpoint that the judgment was legally excessive or because the evidence was insufficient to establish that plaintiff's injuries warranted the return of a verdict of that size. That being true, since we have concluded that the statements made relative to insurance were not shown to have constituted reversible error, the defendants' point in complaint of the size of the verdict and judgment must be overruled.

We therefore are of the opinion that in so far as the judgment obtains against the defendants herein it should be affirmed.

■ The plaintiff has advanced a point of error against the Texas Employers' Insurance Association, the intervenor. Plaintiff contends that the trial court erred in not decreeing the amount of the entire verdict for damages to the plaintiff because the said Association lost its right to subrogation by failing and refusing to cooperate with him in the prosecution of his suit against the defendants.

In this connection, it is noted that the plaintiff went to trial upon pleadings, to which is attached an appendix as a part thereof, in which he states that he brings the suit not only for himself, but as a trustee for the Texas Employers' Insurance Association, because of the payment by the Association of workmen's compensation and medical and hospital bills. He acknowledges in said appendix that by provisions of statute the Association is entitled to be reimbursed out of the first monies received by plaintiff until the amount to which it is subrogated is paid to it. Subsequently, the Association intervened in the case, alleging facts pertinent to its intervention. Plaintiff did not thereafter amend his pleadings, and never prayed for any relief against the Association. Neither did plaintiff file a bond in connection with the appeal of this phase of the case, necessarily considered as between plaintiff as an appellant and the intervening Association as the appellee. Under these circumstances, we are of the opinion that neither of these parties appears before us in any capacity other than that of appellees to the appeal perfected by the defendants. The point advanced must therefore be overruled.

The judgment is affirmed.