Mrs. Sidney E. LIGHT et al., Appellants,

v.

Arno HELDT and Roland Heldt, d/b/a Heldt Brothers, Appellees.

No. 13803.

Court of Civil Appeals of Texas.

San Antonio.

August 1, 1961.

Rehearing Denied Sept. 6, 1961.

Hill, Brown, Kronzer & Abraham, Houston, Weldon B. Mallette, Victoria, John L. Hill, W. Jamez Kronzer, Houston, for appellants.

Lloyd, Lloyd & Dean, Alice, for appellees.

MURRAY, Chief Justice.

This suit was instituted in Duval County, Texas, by Mrs. Sidney E. Light, individually and as next friend of Sidney Carl Light, her minor son, and Patricia A. Goldman, joined by her husband, John Goldman, against Arno Heldt and Roland Heldt, doing business as Heldt Brothers, seeking to recover for the death of Sidney E. Light, pursuant to the provisions of Article 4671 et seq., Vernon's Ann.Civ.Stats., commonly referred to as the Wrongful Death Statute.

The cause was transferred upon a plea of privilege to Jim Wells County. After the transfer to Jim Wells County, the defendants filed a motion for summary judgment under the provisions of Rule 166–A, Texas Rules of Civil Procedure, which was by the court granted upon the theory that Light was a "loaned" or "borrowed" employee of defendants who were covered by "Workman's Compensation Insurance," and therefore could not be sued for common-law damages. The trial court then entered a take nothing judgment against the plaintiffs, and they have appealed.

■ Appellants' first point is to the effect that the trial court erred in granting the summary judgment because under the pleadings, depositions, affidavits and admissions considered by the trial court, there were raised genuine issues as to material facts, which could only properly be determined upon a trial on the merits.

We sustain this contention. Light was a driller employed by Prince Marine Drilling & Exploration Company, hereinafter referred to as Prince Marine. Prince Marine had just completed the drilling of a well upon a lease in Duval County, where Light was fatally injured, and desired to move its drilling equipment to another loca-

tion for the purpose of drilling another well. To accomplish this, Prince Marine employed Heldt Brothers, oil field trucking contractors, to assist in the moving of the rig and equipment. At the time of the fatal accident the rig and most of the equipment had been moved to the new location. The only employee of Prince Marine remaining at the old location was Sidney E. Light. All of the other employees were at the new location for the purpose of "rigging up." The foreman or "pusher" of the trucking crew was also at the new location. Three of appellees' trucks were at the old location at the time of the accident. One of these was in nowise concerned with the accident, being located some distance from the scene. The other two trucks were to move two heavy oil field pumps to the new location. The driver of one of the trucks was Bill Hunter, and his helper or "swamper" was Samuel de los Santos. The driver of the other truck was Robert Lopez, and his "swamper" was Miguel Ramos. The first truck to return to the old location for the purpose of moving the "pumps" was the Hunter truck. The truck was moved into position to pull the pump onto the truck by the use of a cable attached to a winching apparatus. The "swamper," Santos, was having difficulty in getting the loop in the cable, called a bridle, to catch around the pump, and Hunter asked Light "if he would mind helping out" by putting his foot on the cable on one side of the pump while Santos put his foot on the cable on the other side, so as to keep the bridle from slipping off the pump. This Light did, and after the bridle caught, both Light and Santos moved forward to the rear edge of the bed of the truck to insert a "weevil pin" on each side so as to guide the pump onto the bed of the truck as it was being pulled forward by the winch. After inserting the "pin" both Light and Santos stepped backward as a "safety measure" because of the danger of cable failure. At this moment, the Lopez truck, which was being backed up parallel to the Hunter truck, at a distance estimated at approximately six feet

from the Hunter truck, collided with Light and ran over him causing his death. Both Lopez and Hunter had authority to obtain the services of such men as were necessary to accomplish the work they were engaged in.

Sidney E. Light was fatally injured on September 15, 1959, at about 3:00 p. m. The process of breaking down a rig, moving it to a new location and setting it back up is a cooperative effort between the drilling contractor and the oil field trucking contractor engaged to assist in moving the rig and equipment from one location to another. The drilling contractor's crew prepares the rig for movement, makes the necessary disconnections, etc., and then, after the equipment is moved to the new location, the crew sets up the rig and makes the necessary connections, etc., to set the rig in operation.

Under Prince Marine's policies the driller was responsible for the safety and condition of its equipment, and if the rig and equipment was to be moved he was expected to be present during such work and to cooperate, if necessary, to Prince Marine's interests, with the trucking company doing the actual moving. Prince Marine's personnel was expected to cooperate with the trucking contractor to get the job done as quickly as possible. Appellees' charges were on an hourly basis.

Bill Hunter explained his reason for requesting Light to help, "they usually helped us move this or that, at any time we needed help." Santos stated that they "should have had two men back there * * in order to do it and make it hold." He "could have done it, it would have taken a lot longer."

This proof raised a genuine issue of fact as to whether or not under all the circumstances Light was a "loaned" or "borrowed" employee of Heldt Brothers, or whether, in keeping with his duties which he owed to Prince Marine, he was simply cooperating with the employees of Heldt Brothers, in order to protect the equipment and get

it moved as quickly as possible. It cannot be said from the evidence that as a matter of law Light was a "loaned" or "borrowed" employee of Heldt Brothers. Cases in point here are: Eason v. S. & E. T. Ry. Co., 65 Tex. 577; Story v. Partridge, Tex. Civ.App., 298 S.W.2d 662; Stephens v. Mcndenhall, Tex.Civ.App., 287 S.W.2d 259.

██ The purpose of a hearing upon a motion for summary judgment is not to decide questions of fact, but to determine if there exist genuine issues of fact which are material to a decision of the case. If such genuine fact issues do exist they must be determined by the trier of facts when the case is heard upon its merits. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. De la Garza v. Ryals, Tex.Civ. App., 239 S.W.2d 854.

"In determining a motion thus depending upon extrinsic evidence, the court's task is analogous to that which he performs on a motion for directed verdict." 4 McDonald, Texas Civil Practice, § 17.26, p. 1394.

█ We overrule appellants' second point, contending that we should hold as a matter of law that Light was not a "loaned" or "borrowed" employee at the time he was injured. As above stated, we find that under all the circumstances the matter was one of fact. The fact that the trial court may have found from the evidence offered upon the plea of privilege, that Light was a "loaned" or "borrowed" employee of Heldt Brothers is of no importance in passing upon a motion for summary judgment. In the first instance, the court was the trier of the facts, while in the second he was only called upon to determine if a genuine material fact issue was raised.

The judgment is reversed and the cause remanded for a trial upon its merits.