DELBERT ANDERSON, Appellant, v. JOHN P. ABRAMSON, Appellee.

No. 46329.

Mᴀʀᴄʜ 7, 1944.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Mᴀʏ 6, 1944.

Gillespie & Gillespie, of Des Moines, for appellant.

Stipp, Perry, Bannister & Starzinger, of Des Moines, for appellee.

Mᴜʟʀᴏɴᴇʏ, J.—The defendant was the successful bidder for the contract to furnish a crane and crane operator for a Works Progress Administration project for the government. While the crane was being operated on the job it tipped over, injuring the plaintiff, a worker for the WPA on the same job. In his suit against the defendant for damages for his injuries the plaintiff alleged negligence in the operation of the crane as the proximate cause of his injuries, and that the operator was defendant's servant. Defendant pleaded a general denial and specifically denied that he was the master of the operator. At the close of all the evidence the trial court sustained defendant's motion and directed a verdict on the ground "that Mr. Boatwright [the crane operator] was a servant of the WPA and not of Mr. Abramson * * *." The correctness of this ruling of the trial court is the only issue on this appeal.

The inquiry here is as to whether Boatwright was, at the time of the accident, the servant of the defendant or the servant of WPA. Before reviewing the testimony, the principles of law which govern the "borrowed servant doctrine" should be stated. At the outset it should be observed that the defendant was admittedly the general employer of Boatwright.

The borrowed-servant rule is a doctrine of sanctuary for the general employer. As employer he would ordinarily be liable for the act of his servant, under the doctrine of respondeat superior, because of his superior control over his subordinate. If he can show that he has loaned the servant to another and surrendered to the borrower all direction and control over him, then the borrower becomes the master, who is alone liable for the acts of the servant. But the burden is upon the general employer to establish not only that he loaned the servant but that he surrendered control and direction over the servant to the borrower. See, Hooper v. Brawner, 148 Md. 417, 129 A. 672, 42 A. L. R. 1437. In 35 Am. Jur. 971, section 541, the rule is stated:

"A master cannot avoid liability for the negligent act of his servant by merely showing that at the time of the injury, he had loaned the servant to another; but he must also show that when he loaned him, he surrendered to the borrower the right to control and direct him."

Of course, the first test that suggests itself in the inquiry relates to control. He who has control over the servant must respond in damages for the servant's acts. This court has applied this test in Kanipe v. Grundy County Rural Elec. Co-op., 231 Iowa 187, 192, 300 N. W. 662, 665, where we stated:

"A general employee of one employer who has been temporarily loaned to another for a special service does not become the employee of the borrower unless the original employer surrenders full control over the servant so that the servant is under the control and direction of the borrower in the performance of the particular act. That is, the original relation of master and servant must be temporarily suspended and a new relation between the borrower and servant must be created. 35 Am. Jur. 970, section 541; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Hooper v. Brawner, 148 Md. 417, 129 A. 672, 42 A. L. R. 1437; 39 C. J. 1274, section 1462; Swartzwelter v. Iowa Southern Utilities Corp., 216 Iowa 1060, 250 N. W. 121."

The presence of the often-cited case of Standard Oil Co.

v. Anderson as a supporting citation in the above pronounce-ment suggests this court's adherence to the further rule that the control necessary to make the borrower the master must be something more than a right to point out the work to do. See, also, Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. 2d 1085. See, also, Re-statement of the Law, Agency, section 227, comment a.

Another test frequently employed is sometimes called the "whose business test." Whose business is being done by the borrowed servant? Of course, it is not entirely satisfactory, for, in a sense, the servant's work might be furthering the busi-ness of both. Probably the best statement of the general rule is contained in Justice Cardozo's opinion in Charles v. Bar-rett, 233 N. Y. 127, 129, 135 N. E. 199, 200, where he stated:

"* * * as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division * * *."

See, also, Byrne v. Kansas City, Ft. S.. & M. R. R. Co., 6 Cir., Tenn., 61 F. 605, 24 L. R. A. 693; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Restate-ment of the Law, Agency, section 227, comment b.

The right of the general employer to discharge the servant or substitute another for him indicates a continuation of the general employment and such a continuation is also in-dicated where the general employee is using his employer's ma-chine or appliance. Ash v. Century Lbr. Co., 153 Iowa 523, 133 N. W. 888, 38 L. R. A., N. S., 973; Stewart v. California Imp. Co., 131 Cal. 125, 63 P. 177, 52 L. R. A. 205; Wagner v. Larsen, 174 Wis. 26, 182 N. W. 336; Restatement of the Law, Agency, section 227, comment c.

We will now consider the facts in evidence in the light of the foregoing principles of law. There is but little dispute in the testimony. The rental agreement which was part of the bid and acceptance required defendant to furnish the dragline crane outfit and a competent operator and to keep the crane in proper operating condition and supply the necessary lubricants

and fuel. The defendant was a contractor and there was evidence to the effect that he owned several dragline crane outfits and that a part of his business consisted of renting these machines, together with an operator, to third persons. In this case the agreed rental to be paid to defendant was $3.40 per hour, which sum included the charge for "Operating Personnel." The crane is a large, complicated machine, the base being two caterpillar treads or tracks upon which is mounted the crane mechanism. The base is eight or nine feet in width. The boom is about forty feet long and so constructed as to permit its being raised or lowered or moved in a circular direction. A bucket at the end of the boom is manipulated by cables and pulleys and the bucket and boom are moved by an engine located above the base and operated by clutches, gearshifts, and a throttle.

The evidence of the WPA officials would indicate that they had control over the operator of the crane to the extent that they could tell him where to locate the crane, what work to do, and where to obtain and deposit the bucket loads of dirt. The foreman for the project testified:

"From time to time out there I told Boatwright what kind of work I wanted done. But I did not tell him the manner in which he was to do it."

He further testified that he had a right to give Boatwright directions as to the type of work he was to do but that he was "not particularly interested in the crane itself." He further testified: ·

"As I remember it that outfit [crane] had been located near this filter bed removing dirt from the filter bed possibly a week before the accident and during all of that time Boatwright was operating the crane. No one else operated the crane during any of that time * * * I told the operator of the crane where I wanted the dirt moved from and where I wanted it deposited * * * he Boatwright, moved the crane to the site where the dirt was to be picked up. * * * I never saw anyone other than Boatwright or another operator on the job working for Abramson, manipulate or operate in any way the levers, valves, and housing and the like of that crane or caterpillar mechanism in

moving from one spot to another. * * * Then after Boatwright got located * * * no one other than Boatwright moved the levers and valves and mechanisms which caused the boom to swing * * * which lowered the boom to the proper height or angle which caused the cables to lift the clamshell bucket up and around and Boatwright stopped the upward movement of the clamshell bucket * * * which caused the boom to move around in a circling position and no one else helped him in those activities. Boatwright determined the speed with which the bucket was lifted * * * the height to which the clamshell bucket when loaded was lifted * * * when the boom was to be stopped and the bucket lowered and the jaws * * * opened * * * the size or amount of the load * * * the speed with which the bucket was raised or the boom moved, that bucket lowered, and no one else assisted him * * * Just before the accident occurred the boom approached the position where it was about to load * * * Then the operator dropped the bucket * * * closed the jaws of the clamshell and took on a load. After the load was taken the operator of the crane elevated the bucket and * * * started to rotate the boom and the cab and the machinery. * * * The bucket was swung toward the northwest and then toward the north as the bucket approached the ramp. I would say that when the clamshell bucket was first brought up on that particular trip, had it been kept at the same height as it was when it started on the swing, the bucket would not quite clear the ramp * * * As the bucket approached the ramp I saw the bucket raised * * *. When I saw the bucket being raised I saw it start to tip * * * At that time I saw the cab and caterpillar outfit upsetting. * * * I saw the jaws open and dirt begin to come down. But by that time it had careened so far out, swung over, and slung the bucket over and hit Mr. Anderson standing on the scaffold.''

Another WPA workman who witnessed the accident testified:

''As the bucket raised up and started over the ramp it seemed like it went up with a jerk, and as this jerked it up, in my estimation, the weight was so great that the dragline [crane] could not hold it, and it started to upset * * *.''

The timekeeper for the WPA, who made out the time sheet in accordance with the contract, stated:

"We did not segregate the machine from the operator and from the gasoline. It was all paid in one lump sum. I allowed one lump sum for the use of the machine and operator, grease and oil."

The defendant did not testify and Boatwright, the defendant's sole witness, did not dispute plaintiff's testimony except that he stated that he raised the bucket high enough to clear the ramp and the tipping was probably caused by the settling of the ground underneath the tractor treads. He further testified:

"I had a talk with Abramson over the phone before I went to work up there. He wanted me to go out and operate the machine that he had rented to the WPA and to take orders from and please the foremen on the WPA. * * * He said that he would pay me after he received a check from the WPA, or maybe 4 or 5 days after the 1st and 15th of the month. He told me to take care of the machine and keep it in repair and to generally look after it. I in substance told him I would take the job."

When he was a witness for the plaintiff he was asked if he would have complied with instructions from the WPA foreman concerning the manner of operating the machine. He answered, "Well, to a certain extent. To the extent that it was not going to hurt the machine, hurt myself or anybody else." He also testified that he was paid by Mr. Abramson on a calendar-month basis and he received no money from the government.

The decision of the trial court can only be sustained by finding that the foregoing evidence establishes as a matter of law that Boatwright was at the time of the accident a servant of WPA. The trial court in its ruling, and appellee's counsel in their brief, do not call our attention to the testimony or evidence supporting such a conclusion. When we test the evidence by the concept of control or whose business was being performed by the servant, we reach the conclusion that the question was for the jury.

Here is a general employer who, the jury could find, is in the business of renting these large, complicated machines, with

a servant to operate them. In his contract with the government to furnish the machine he agreed to furnish an operator. In effect, the operator became a part of the machine. Defendant agreed to furnish the machine and the gasoline or motive power, plus the hand at the lever and the foot at the thrott'e to guide and direct the motor-driven machine. And the WPA had the same right over the operator that it did over the machine. If either did not work satisfactorily, it could take the matter up with the general employer. The defendant could, under the contract, furnish any machine within the specifications of the contract and any operator within the specifications of "competent operator" and his contract would be fully performed. It was the entity of the machine and operator that was rented. While the WPA acquired dominion over the entity to direct the work to be done, it acquired no authority to direct the manner of doing it. The only evidence in the case is the disclaimer by the foreman of the right to control the manner of operating the crane. Defendant, under the contract, was paid so much per hour for the hours the WPA actually used the machine and "operating personnel." Defendant had the duty to pay for his own operator. The defendant was to furnish a running machine, and it was contemplated that this would entail the expense on his part for fuel, lubricants, repairs, and an operating servant. The machine, fuel, lubricants, repairs, and operating servant were all his. In a sense, each performed a special function for him which enabled his performance of his contracting business.

We do not think the evidence established as a matter of law that defendant had surrendered full rights of control and direction over Boatwright to WPA so that the latter was his master. The issue is at least for the jury upon the evidence here presented by the plaintiff. The case is reversed.—Reversed.

All JUSTICES concur.