**Donald BURR, Appellant,**

**v.**

**APEX CONCRETE COMPANY and Lee Shockley, Appellees.**

No. 2–57316.

Supreme Court of Iowa.

May 19, 1976.

Conley, Zohn & Needles, Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave by Michael H. Figenshaw and Terry C. Hancock, Des Moines, for appellees.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

UHLENHOPP, Justice.

The principal question in this appeal is whether the owner of a concrete ready-mix truck has tort responsibility for the conduct of a concrete contractor's employees when they give directions to the truck driver as he backs the truck and when they help him position the unloading chute.

On March 20, 1972, plaintiff Donald Burr was an employee of Leonard Reed Construction Company (Reed), which had a subcontract to do the concrete work in an apartment complex in West Des Moines,

Iowa. Defendant Apex Concrete Company (Apex) delivered concrete in ready-mix trucks. Reed's foreman at the site, Richard T. Lee, told the drivers of Apex trucks where to dump the concrete.

Lee told one of those drivers, Lee Shockley, to dump his load through a window in a concrete block wall. This meant the chute on the rear of the truck had to go through the window. Shockley could not see the chute at the back of the truck, and he enlisted Lee's help.

Lee stood behind and to the side of the truck, directing Shockley to the rear and operating a hydraulic control which raised or lowered the chute. Another of Reed's employees, Clinton F. Humbert, stood at the window in the wall and attempted to guide the chute through that aperture. But a short piece of steel projecting from the chute struck the wall with sufficient force to push in a section of wall some 20 degrees.

Shockley got out of the truck and talked with Lee. The evidence is conflicting whether Lee and Shockley warned Reed's employees in the building, one of whom was plaintiff, about the leaning wall. At any rate, those employees continued to work.

Shockley dumped his load of concrete and pulled his truck away. Shortly thereafter—ten to fifteen minutes after the truck struck the wall—the leaning section of the wall fell onto plaintiff, injuring him.

Plaintiff sued Apex, Shockley, Lee, and Humbert. In various divisions of his petition, plaintiff alleged negligence on the part of defendants individually and in combination. In addition, plaintiff charged Apex with liability for the negligence of Shockley, of Lee, and of Humbert as alleged agents of Apex.

At the conclusion of the evidence, the trial court directed verdicts for Apex on plaintiff's claims against it founded on the negligence of Lee and Humbert; the court held plaintiff did not introduce substantial evidence that Lee and Humbert were agents of Apex. The court submitted to the jury plaintiff's claims against each of the defendants based upon the alleged negligence of each defendant and also, as to Apex, based upon the alleged negligence of Shockley as the employee of Apex.

The jury awarded plaintiff damages of Lee and Humbert, but found Shockley and Apex not liable.

In this appeal, plaintiff claims the trial court erred in directing a verdict for Apex on plaintiff's claim that Apex is liable for the conduct of Lee and Humbert, and also in giving certain instructions to the jury.

I. *Liability of Apex for Conduct of Lee and Humbert.* Plaintiff asserts on three grounds the trial court erred in directing a verdict for Apex on plaintiff's claim that Apex is liable for the conduct of Lee and Humbert.

A. Plaintiff first argues that Apex is liable for negligence of Lee or Humbert under the motor vehicle owner liability statute, § 321.493, Code 1975.

■ We find no indication in the record that the plaintiff asserted this theory in the trial court. Plaintiff did not mention this basis of liability in his petition but alleged, rather, that Lee and Humbert were agents of Apex. At trial, plaintiff objected to the trial court's failure to instruct on § 321.493 but only in connection with the responsibility of Apex for the negligence of Shockley, its truck driver. Plaintiff's post-trial alternative motions for judgment notwithstanding verdict or new trial did not assert the statute. Under these circumstances we do not consider this theory; plaintiff presents nothing for review. *Aetna Cas. & Sur. Co. v. Jewett Lumber Co.,* 209 N.W.2d 48, 50 (Iowa); *Berhow v. Kroack,* 195 N.W.2d 379, 382 (Iowa).

B. In another division of his brief, plaintiff claims that in its answer Apex failed to deny effectively his allegations of Lee and Humbert's agency for Apex; hence such allegations must be taken as true.

In his petition, plaintiff alleged that Lee and Humbert were agents of Apex. In its answer, Apex denied the allegation. Rule 98 of the Rules of Civil Procedure states:

Partnership, corporate or *representative capacity*; or corporate authority to sue or do business in Iowa; or performance of conditions precedent; or judgments of a court, board or officer of special jurisdiction, may be pleaded as legal conclusions, without averring the facts comprising them. *It shall not be sufficient to deny such averment in terms contradicting it, but the facts relied on must be stated.* (Italics added.)

Plaintiff asserts that by alleging Lee and Humbert's agency he alleged "representative capacity" within rule 98; that the rule required Apex to state "the facts" relied on in denying agency; that the denial of agency by Apex was thus ineffective; and that the allegation of agency therefore stood admitted.

■ We believe the term "representative capacity" in rule 98 relates to capacity to sue or be sued, not to an agency relationship relied upon to impose vicarious liability. The cases decided under the predecessor statutes of the rule deal with the capacity to sue or be sued of conservators, *Ross v. Long*, 219 Iowa 471, 258 N.W. 94; trustees, *Windsor v. Barnett*, 201 Iowa 1226, 207 N.W. 362; assignees, *Fransham v. Tow Bros.*, 196 Iowa 1082, 196 N.W. 71; administrators, *Mayes v. Turley*, 60 Iowa 407, 14 N.W. 731, and receivers, *Goodhue v. Daniels*, 54 Iowa 19, 6 N.W. 129.

Rule 98 was derived in part from § 11207, Code 1939:

A plaintiff suing as a corporation, partnership, executor, guardian, or in any other way implying corporate, partnership, representative or other than individual capacity, need not state the facts constituting such capacity or relation, but may aver the same generally, or as a legal conclusion, and where a defendant is held in such capacity or relation a plaintiff may aver such capacity or relation in the same general way.

Section 11208 required denials of such averments to state the facts relied upon. These predecessor statutes deal with the capacity of a representative to sue or be sued. See

also rule 9(a), Federal Rules of Civil Procedure.

Further support for this view of "representative capacity" in rule 98 is found in rule 20, R.C.P.:

When any public official, or any administrator, express trustee *or other person in a representative capacity*, ceases to be such while a party to a suit, the court may order his successor brought in and substituted for him. (Italics added.)

■ Rule 98 allows general averments of capacity as conservator, trustee, and so on because such capacity is seldom in issue. On the other hand, agency as a foundation of liability for the acts of another is, as in this case, often hotly disputed. We hold the denial by Apex of agency relationship placed plaintiff's allegation of agency in issue.

■ C. Plaintiff argues finally in this part of the appeal that plaintiff adduced substantial evidence Lee and Humbert were agents of Apex; hence the trial court erred in taking the agency issue from the jury. See *Schneberger v. Glenn*, 176 N.W.2d 782, 784 (Iowa). In ruling on this argument we view the evidence in the light most favorable to plaintiff. Rule 344(f)(2), R.C.P.

The evidence shows beyond question that workers at construction sites customarily direct and assist cement truck drivers in backing and positioning their vehicles; that Lee told drivers of Apex where to dump their loads; that Shockley enlisted Lee's assistance in dumping the load involved here; that Lee got Humbert to help; and that Lee and Humbert gave directions to Shockley and helped position the chute. Was the question of an agency relationship of Lee and Humbert for Apex for the jury under this record?

Lee and Humbert were employees of Reed. Plaintiff asserts that when Lee and Humbert helped Shockley, they became employees of Apex. Cases dealing with the "borrowed servant rule" thus come into play.

The general rule is that "[a] servant directed or permitted by his master to per-

form services for another may become the servant of such other in performing the services." Restatement, Agency 2d, § 227. This court has recognized the rule. *Hassebroch v. Weaver Const. Co.*, 246 Iowa 622, 67 N.W.2d 549; *Miller v. Woolsey*, 240 Iowa 450, 35 N.W.2d 584; *Anderson v. Abramson*, 234 Iowa 792, 13 N.W.2d 315; *Kanipe v. Grundy County Rural Electric Co-op.*, 231 Iowa 187, 300 N.W. 662; *Ash v. Century Lumber Co.*, 153 Iowa 523, 133 N.W. 888.

■ In the absence of evidence to the contrary, the inference is that an employee remains in his original employment. See *Hassebroch v. Weaver Const. Co.*, supra, 240 Iowa at 633, 67 N.W.2d at 556; *Anderson v. Abramson*, supra, 234 Iowa at 794, 13 N.W.2d at 316; Restatement, Agency 2d, § 227, Comment *b* at 501; 53 Am.Jur.2d Master & Servant § 415 at 428.

■ In addition, a servant of one master will be held to have become the servant of another master only insofar as the latter has the right to control and direct the servant's activities. *Anderson v. Abramson*, supra, at 794, 13 N.W.2d at 316; *Kanipe v. Grundy County Rural Electric Co-op.*, supra, at 192, 300 N.W. at 665; *Ash v. Century Lumber Co.*, supra, at 533, 133 N.W. at 892; 53 Am.Jur.2d Master & Servant § 415 at 425. As the Court stated in the leading case on this subject, *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480, 484:

> To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.

With the right to control and direct a servant's acts comes responsibility for such acts; without that right respondeat superior does not apply.

Plaintiff did not introduce substantial evidence that Apex, through Shockley, had the right of control of the acts of Lee and Humbert. Although Shockley asked Lee for help, no evidence appears that Shockley had any control over the way in which Lee or Humbert gave the help; the manner in which they positioned the chute and directed Shockley when he backed the truck was up to them. Lee and Humbert merely cooperated with Shockley; they did not submit to his control. As stated in the *Standard Oil* case:

> [W]e must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking. . . . [W]hen one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. 212 U.S. at 222, 226, 29 S.Ct. at 254, 256, 53 L.Ed. at 484, 485.

See also *Kanipe v. Grundy County Rural Electric Co-op.*, supra, at 193, 300 N.W. at 666.

■ Other factors lead us to the same conclusion. Relevant considerations are the length of time of the alleged special employment and the parties' belief or disbelief that a new relation of master and servant exists. Restatement, Agency 2d, § 227, Comment *a* at 500, § 220(2)(f) and (i). The short time spent by Lee and Humbert in helping Shockley suggests they did not become servants of Apex; and the evidence does not show that Lee, Humbert, or Shockley thought of Lee and Humbert as servants of Apex and subject to its control.

The custom is significant that construction site workers aid drivers like Shockley in backing their trucks. The custom appears similar to the assistance given truckers generally in making deliveries of materials at construction sites—informing them where to place the material and helping them back into narrow or difficult positions. Under the custom, part of the functions of a construction company itself is to provide assistance, through its employees, to the employees of companies making deliveries. Thus part of Lee and Humbert's duties *to their own employer Reed* was to inform cement truck drivers where to dump the

loads and to help the drivers get into such position. In thus helping Shockley, Lee and Humbert were engaged in *Reed's own business* and remained Reed's servants.

Our view finds support in *Rogers v. Navajo Freight Lines, Inc.,* 186 Neb. 502, 184 N.W.2d 623. There the plaintiff truck driver stopped at the loading dock of the defendant freight company. The defendant's foreman asked the plaintiff to help him and a driver for Navajo Freight Lines load a heavy crate from the dock onto a Navajo truck. In helping load the crate, the plaintiff was injured as a result of the foreman's negligence. The defendant argued it was not liable for the foreman's actions because in loading the crate the foreman had become the borrowed servant of Navajo. The Nebraska Supreme Court said:

> This argument must fall. The undisputed testimony indicates that it was part of the foreman's duties to assist the drivers in loading heavy objects and that both he and the drivers were accustomed to request the assistance of other drivers. In assisting to load the crate, he was engaged in *his employer's* business . . . . 186 Neb. at 505, 184 N.W.2d at 625. (Italics added.)

Also supportive of our view is *Stephens v. Mendenhall,* 287 S.W.2d 259 (Tex.Civ.App.). There the plaintiff was a roustabout employed by an oil well driller. The defendants contracted with the driller to move his drilling rig. The defendants' employee, a truck driver, asked the plaintiff to help him load part of the rig, and the plaintiff was injured in doing so and sued the defendants. The defendants contended that the plaintiff was barred from suing them by the workmen's compensation law because the plaintiff was the defendants' employee under the borrowed servant rule, rather than the employee of the driller. The court rejected this contention, saying that the plaintiff rendered the service for his own employer, the driller. The court added:

> There is no evidence in the record indicating [the plaintiff] ever submitted himself to the defendants in so far as the control

of the details of his performance of acts was concerned. 287 S.W.2d at 264.

Plaintiff relies upon language in *Thyssen v. Davenport Ice & Cold Storage Co.,* 134 Iowa 749, 112 N.W. 177. The case is inapposite. The person rendering assistance there was a volunteer not employed by someone else. Under the facts of that case, a jury could find the defendant controlled the person's acts.

■ The trial court did not err in holding that Apex was not vicariously liable for the conduct of Lee and Humbert.

II. *Instructions.* Plaintiff contends on two grounds that the trial court erred in instructions to the jury.

A. Plaintiff objected that the trial court failed to instruct adequately on plaintiff's theory that defendants' combined negligence proximately caused plaintiff's injury—one of plaintiff's pleaded bases of recovery.

The trial court instructed the jury relative to plaintiff's charges of negligence against all of the respective defendants. With regard to combined or concurrent negligence, the court instructed the jury:

> Before the plaintiff can recover he must establish by a preponderance of the evidence that the defendants or any of them were negligent in one or more of the particulars alleged by the plaintiff and that such negligence was either the sole proximate cause or a concurring proximate cause of any injury and damages to plaintiff.

> Proximate cause has been heretofore defined. A proximate cause need not be the sole and only cause of damage or injury.

> Where the negligence of two or more persons concurs or combines to cause injury to a third person, and the injury would not have resulted without such concurring negligence, the negligence of such persons would be the proximate cause of such injury. In other words, one whose negligence is a direct cause of injury to another is not relieved from responsibility for his negligence because some

third person was also negligent and his negligence concurred or combined to cause the injury.

Where the negligence of only one person is the proximate cause of an injury or damage it is referred to as the sole proximate cause. Where the negligence of two or more persons combine to proximately cause an injury or damage the negligence of each is referred to as a concurring proximate cause or concurrent negligence and in such case each of the negligent persons is liable and the extent to which the damage is attributable to the different causes is immaterial.

In this case it was alleged by plaintiff that all of the defendants, to-wit: Apex Concrete Company, Inc., Clinton Franklin Humbert, Richard T. Lee and Lee Shockley, were each negligent and that the negligence of each was a proximate cause of the accident. These allegations should be separately considered. A finding by you that any defendant was or was not negligent or that such negligence, if any, was or was not a proximate cause of the plaintiff's injury would not determine the questions of negligence and proximate cause as to the other defendants, unless you find that the negligence of one was the sole proximate cause.

■ This instruction essentially follows the uniform instruction, and under this record it is an adequate statement of the Iowa law on concurrent negligence. See I Iowa Uniform Jury Instructions, No. 2.8 (1970); *DeYarman v. State,* 226 N.W.2d 26 (Iowa); *Treanor v. B.P.E. Leasing, Inc.,* 158 N.W.2d 4 (Iowa); *Henneman v. McCalla,* 260 Iowa 60, 148 N.W.2d 447; *Mathews v. Beyer,* 254 Iowa 52, 116 N.W.2d 477; *Ruud v. Grimm,* 252 Iowa 1266, 110 N.W.2d 321. The instruction permitted the jury to find that any number or all of the defendants were liable for plaintiff's injury, depending on whose negligence caused or concurred— "combined" as plaintiff put it—in causing the injury. This adequately stated plaintiff's theory.

■ If plaintiff meant instead that negligence by a defendant could be found by "combining" the actions of all the defendants, whereas considered separately no negligence by such defendant existed, he asked the court to misstate the law. *Rauch v. Des Moines Electric Co.,* 206 Iowa 309, 312, 218 N.W. 340, 342.

■ Further on this point, plaintiff objected to the form of verdict supplied by the court. The form first allowed the jury to state the amount of plaintiff's damages. The form then allowed the jury to state separately as to each defendant whether it found such defendant liable for that amount. The form clearly allowed the jury to find one, two, three, or all defendants liable or not liable. The jury did in fact find for plaintiff against two defendants— Lee and Humbert. We do not believe the form of verdict would cause the jury to think all defendants could not be found liable.

B. In Instruction 17 the trial court dealt with the liability of Apex for the acts of Shockley under the doctrine of respondeat superior. The court told the jury as a matter of law, "It appears without dispute that Lee Shockley was acting in the course and scope of his employment by the defendant Apex Concrete Company" and "negligence, if any, on the part of Lee Shockley is chargeable not only against the defendant Lee Shockley but also against the defendant Apex Concrete Company, Inc." Plaintiff objected that the trial court should also have predicated the liability of Apex for Shockley's conduct on the owner liability statute, § 321.493, Code 1975. In ruling on this objection, the trial court stated: "Plaintiff's objections to Instruction No. 17 are overruled for the reason that said instruction constitutes a proper statement of the law and places liability upon the defendant Apex Concrete Company, and the fact that there may be additional reasons why Apex Concrete Company would be responsible for the negligence of its employee has no bearing upon the ultimate liability of said defendant."

■ We hold that the reason stated by the trial court is sound. The court had

already told the jury that Apex was responsible for Shockley's negligence by virtue of the employer-employee relationship; placing responsibility on Apex under § 321.493 also would add nothing. Had a fact issue been submitted to the jury on the liability of Apex under respondeat superior, we would have a different situation, but such was not the case. *Hagenson v. United Tel. Co. of Iowa,* 209 N.W.2d 76, 82–83 (Iowa).

The challenged instructions were proper.

We find no error.

AFFIRMED.