Jerry BRIDE, Appellant,

v.

Gary HECKART and Bud Heckart &
Sons Trucking & Excavating,
Inc., Appellees.

UNION MUTUAL INSURANCE
CO., Intervenor–Appellant,

v.

Gary HECKART and Bud Heckart &
Sons Trucking & Excavating,
Inc., Appellees.

No. 95–733.

Supreme Court of Iowa.

Nov. 20, 1996.

Rehearing Denied Dec. 17, 1996.

Stephen D. Lombardi, Des Moines, for appellant Bride.

Joel H. Dorman, Des Moines, for appellant Union Mutual Insurance Co.

Timothy J. McKay of McKay, Moreland & Webber, P.C., Ottumwa, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

In this negligence action, plaintiff Jerry Bride sued Gary Heckart and Bud Heckart & Sons Trucking & Excavating, Inc. (Heckart & Sons) for injuries sustained in a construction site accident. At trial, the court submitted an instruction on the borrowed servant doctrine. After the jury found Bride was a fellow employee of Gary Heckart, the court entered a judgment for the defendants. We reverse and remand.

I. *Background Facts and Proceedings.*

In the fall of 1989, a general contractor hired Winger Contracting Co. (Winger) to relocate a storm sewer system and water main at the K–Mart store in Ottumwa, Iowa. Winger then orally contracted with Heckart & Sons, which has done most of Winger's excavation work for over thirty years, to provide the excavation work for the project. Heckart & Sons agreed to supply a track excavator (basically, a large backhoe) and an operator for an hourly rate. With this project, the excavation work consisted of digging, grading, and back-filling the trenches for the sewer pipes. As part of the agreement, the operator was also expected to use the backhoe to assist in lowering the pipes into the trench and connecting them. This customary practice between plumbers and excavators developed because it is virtually impossible to manually move the large pipes into place and connect them in the excavated trenches.

Gary Heckart, employee and also president of Heckart & Sons, was at the job site on November 6, 1989. He was joined by Steve Mesecher, Winger's foreman, and Bride, an employee of Winger. After Gary completed the excavation of one section of the trench, he began using the backhoe to assist Mesecher and Bride in placing the pipe into the trench and connecting it. Mesecher and Bride both worked from inside the trench. While operating the controls on the backhoe, Gary followed the signals and instructions of Mesecher to position the boom and the bucket. This is also a customary practice because a person in the trench has a better vantage point than the operator of the backhoe. Throughout the project, Gary was the only operator of the backhoe.

Once Gary, Mesecher, and Bride got the pipe lowered into the trench, they were ready to use the backhoe's bucket to push the new sewer pipe into place. To protect the new pipe from being damaged by the bucket, a block of wood was inserted between the bucket and the pipe as a cushion. At some point during this process, the block of wood snapped and struck Bride in the leg. As a result of the accident, Bride's leg was eventually amputated. Union Mutual Insurance Co. (Union Mutual), the workers' compensation insurance carrier for Winger, paid benefits to Bride for his injuries.

Bride filed this negligence action against Gary Heckart and Heckart & Sons. Union Mutual filed a notice of its workers' compensation lien and a petition for intervention. Both were resisted by Bride. Following a hearing, the district court held that the lien of Union Mutual was terminated because it was not timely filed, but that the petition for intervention was allowed under Iowa Rule of Civil Procedure 75.

In their answer, defendants denied liability and asserted several defenses. Among other things, they asserted that Gary Heckart was a borrowed servant of Winger at the time of Bride's injury; thus, Gary and Bride were co-employees of Winger. As a result, defendants argued, under Iowa Code section 85.20(2) (1993), Gary could not be liable for damages to Bride unless he was grossly negligent, and Heckart & Sons could not be vicariously liable under basic respondeat superior principles for the conduct of its employee.

The case proceeded to trial, and, over the objections of plaintiffs, the district court gave two instructions concerning the borrowed servant doctrine. On March 23, 1995, the jury returned a special verdict, finding that Bride was a co-employee of Gary Heckart at the time of the accident. Plaintiff's motion for new trial was denied, and judgment was entered for the defendants upon the jury's verdict. Plaintiff filed timely notice of appeal, which was consolidated with Union Mutual's appeal.

Several issues were raised on appeal. First, Bride and Union Mutual argue that

the district court erred in instructing the jury on the borrowed servant doctrine. Next, Bride argues that the district court erred in allowing Union Mutual to intervene and participate at trial. Also, Bride argues that the district court judge erred in failing to disclose his prior representation by defense counsel's law firm. Our scope of review is for the correction of errors at law. Iowa R.App. P. 4.

## II. *Jury Instructions on Borrowed Servant Doctrine.*

Bride and Union Mutual's first argument on appeal is that the district court should not have instructed the jury on the borrowed servant doctrine. Their argument is not that the instructions incorrectly state the law, but that there is insufficient evidence to support submission of the instructions to the jury. We agree.

 We review jury instructions to decide if they are a correct statement of the law and are supported by substantial evidence. *Collister v. City of Council Bluffs,* 534 N.W.2d 453, 454 (Iowa 1995). The court is required to instruct the jury as to the law applicable to all material issues in the case. Iowa R. Civ. P. 196. However:

> The instructions should not marshal the evidence or give undue prominence to any particular aspect of a case. Requested instructions that are not related to the factual issues to be decided by the jury should not be submitted even though they may set out a correct statement of the law. *The submission of instructions upon issues that have no support in the evidence is error.*

*Vachon v. Broadlawns Med. Found.,* 490 N.W.2d 820, 822 (Iowa 1992) (citations omitted) (emphasis added). Evidence is substantial enough to support a requested instruction when a reasonable mind would accept it as adequate to reach a conclusion. *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 150 (Iowa 1992). In weighing the sufficiency of the evidence, we give it the most favorable construction it will bear in favor of the party seeking submission. *Id.*

At trial, Bride and Union Mutual objected to the submission of two instructions regarding the borrowed servant doctrine. Instruction 19, which is identical to Iowa Civil Jury Instruction 730.4 (1987), stated:

> An employee of one employer who has been temporarily loaned to another for a special service does not become the employee of the borrower unless the original employer surrenders full control over the employee. Full control means that the employee is under the control and direction of the borrower in performance of the particular act involved. The control necessary must be something more than the right to point out the work to be done.

Instruction 19a stated:

> Under Iowa law, a worker may have more than one employer. In that situation, the worker may be an employee of one employer for the purpose of doing certain activities, but the employee of another employer for other activities.

The borrowed servant doctrine has its origin in the Restatement (Second) of Agency, which states:

> A servant directed or permitted by his [or her] master to perform services for another may become the servant of such other in performing the services. He [or she] may become the other's servant as to some acts and not as to others.

Restatement (Second) of Agency § 227 (1958). Our court has recognized this doctrine on numerous occasions. *See Parson v. Procter & Gamble Mfg. Co.,* 514 N.W.2d 891, 895 n. 1 (Iowa 1994); *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 45 (Iowa 1984); *Burr v. Apex Concrete Co.,* 242 N.W.2d 272, 275–76 (Iowa 1976). However, in the past we have been reluctant to apply the doctrine. In *Parson,* we held that "in cases involving the question of whether an employee of a general employer became the employee of a special employer, the presumption is that the general employer continues as the sole employer." *Parson,* 514 N.W.2d at 894; *see also* Restatement (Second) of Agency § 227 cmt. b.

The borrowed servant doctrine is significant, in part, because it operates to relieve the general employer from liability. To summarize:

> The employer who temporarily borrows and exercises control over another's em-

ployee assumes liability in respondeat superior for the activities of the borrowed employee. If an employee was a borrowed servant at the time of the allegedly tortious conduct, the employee's general employer can escape liability for such conduct.

27 Am.Jur.2d *Employment Relationship* § 462, at 899 (1996).

▮ In determining whether an employee becomes the "borrowed servant" of a special employer, the primary consideration focuses on control. The burden is on the general employer to establish not only that it loaned the servant, but that it surrendered control and direction over the servant to the borrower. *Miller v. Woolsey*, 240 Iowa 450, 457, 35 N.W.2d 584, 587–88 (1949). In other words, the focus is on which employer had control over the employee at the time of the incident causing injury. 27 Am.Jur.2d *Employment Relationship* § 462, at 899. Absent evidence to the contrary, the original employer is presumed to retain the right of control. *Id.* at 900.

Bride contends that at no time did Winger or its employees exercise complete control over Gary's work. He argues that Winger, acting through its foreman, was merely directing the work to be done. Defendants contend, however, that the pipe-seating phase was plumbing work, not excavation work, and that Mesecher, Winger's foreman, had complete control over Gary Heckart.

As is apparent in Iowa Civil Jury Instruction 730.4, we have held that the control necessary to make the special employer the master must be something more than a right to point out the work to be done. *Bethards*, 355 N.W.2d at 45; *see also* Restatement (Second) of Agency § 227 cmt. d (the fact that the employee obeys the requests of the temporary employer as to the act does not necessarily cause him to be the servant of such employer); *Anderson v. Abramson*, 234 Iowa 792, 796, 13 N.W.2d 315, 317 (1944) (control by temporary employer to the extent that they could tell employee where to locate the crane, what work to do, and where to obtain and deposit dirt was insufficient to show full control); Raymond A. Sloan, Jr., *Liability of Carriers for Independent Contractors' Negligent Operation of Leased Motor Trucks*, 43 Iowa L.Rev. 531, 534 (1958)

(borrowed servant question almost invariably arises when a contractor leases a machine to perform a certain job and furnishes his employee to operate the machine. A vast majority of the decisions holds that the operator has continued in his general employment.).

The United States Supreme Court addressed the subject of control in *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). In *Standard Oil*, the Court stated:

when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be cooperation and coordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed cooperation rather than subordination, and is not enough to show that there has been a change of masters.

*Standard Oil*, 212 U.S. at 226, 29 S.Ct. at 256, 53 L.Ed. at 485. In other words, the Supreme Court held there is a distinction between authoritative direction and control, and mere suggestion as to details or the necessary cooperation. *Id.* at 222, 29 S.Ct. at 254, 53 L.Ed. at 484.

Here, Winger did nothing more than direct the positioning of the bucket on the backhoe. Gary Heckart never relinquished control of the backhoe. He was merely cooperating, as is the custom and practice in the profession, to help Winger connect the pipes in the trench. Further, it simply does not make sense to hold that, just by assisting Mesecher and Bride in lowering and connecting the pipes, Gary engaged in plumbing work and became a special employee (borrowed servant) of Winger.

▮ Other factors to consider in determining the status of an employee focus on whether an employment relationship exists. This can be accomplished by looking at the intention of the parties. *Parson*, 514 N.W.2d at 894; *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 505 (Iowa 1981). Another method of determining whether such a relationship exists is application of the five-factor test established in *Henderson v. Jennie Ed-*

*mundson Hospital,* 178 N.W.2d 429, 431 (Iowa 1970). These factors include:

(1) the right of selection, or to employ at will;

(2) responsibility for the payment of wages by the employer;

(3) the right to discharge or terminate the relationship;

(4) the right to control the work; and

(5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed.

*Henderson,* 178 N.W.2d at 431.

In considering the intention of the parties, nothing in the record indicates that the employers or Gary Heckart intended to create borrowed servant status. Further, none of the factors in the *Henderson* test are satisfied. First, Winger had no right to select the operator of the excavation equipment. That decision was clearly left to Heckart & Sons. Second, Winger was not responsible for payment of Gary Heckart's wages. Winger simply paid an hourly rate to Heckart & Sons for the services performed. Third, Winger had no right to terminate Gary Heckart's employment. At best, Winger could have requested a different operator. Fourth, as discussed below, Winger did not have the right to control the work. Finally, the last factor is not determinative because Gary Heckart's activities benefited *both* Winger and Heckart & Sons.

We conclude there was insufficient evidence to support submission of the instructions on the borrowed servant doctrine to the jury. We reverse on this issue and remand for retrial.

### III. *Intervention and Participation of Insurance Carrier.*

Next, Bride alleges that the court acted erroneously in allowing the workers' compensation carrier to intervene and advise the jury as to the status of the workers' compensation benefits. He also argues that the intervenor was present at trial and actively participated in certain matters, which prejudiced his rights.

Union Mutual clearly had a right to intervene in this case. *See* Iowa Code § 85.22; Iowa R. Civ. P. 75. In *Daniels v. Hi–Way Truck Equipment, Inc.,* 505 N.W.2d 485 (Iowa 1993), we stated:

Under Iowa's workers' compensation law an employer or employer's insurer has a statutory right to be indemnified and to have a lien on any recovery or judgment entered in an action against a third-party tortfeasor. If the employee fails to bring an action against a third-party tortfeasor, the employer or the employer's insurer has a right of subrogation and may maintain an action against such third-party tortfeasor. An employer or the employer's insurer that has paid workers' compensation benefits ordinarily has a right to intervene in the employee's third-party tort action.

*Daniels,* 505 N.W.2d at 487–88. However, the right to intervene in a lawsuit and the right to actively participate in a trial are separate issues. The primary right to control litigation always lies with the injured party. *See Foveaux v. Smith,* 17 Kan.App.2d 685, 843 P.2d 283, 290 (1992). An intervening insurance carrier has no right to active participation at trial. *Id.*

In *Krapfl v. Farm Bureau Mutual Insurance Co.,* 548 N.W.2d 877 (Iowa 1996), we stated that, absent some inability or unwillingness of the injured party to adequately pursue the entire claim, the role of the intervening insurance carrier should be limited to seeking satisfaction of its subrogation interest from those sums recovered through the efforts of the injured party. *Krapfl,* 548 N.W.2d at 880. In other words, the injured party remains in full and complete control of the cause of action. To the extent that *Krapfl* states that intervening insurance carriers have limited participation rights at trial, it modifies our prior decision of *Price v. King,* 255 Iowa 314, 122 N.W.2d 318 (1963). As the Kansas Court of Appeals stated in *Foveaux,* "[i]t would be chaotic to grant full participation to the counsel for the insurance carrier who may pursue theories and claims the carrier deems beneficial, but which are detrimental to the primary holder of the cause of action." *Foveaux,* 843 P.2d at 290.

The extent of participation is a matter of district court discretion. *Id.* The court can, and should, take any appropriate steps to prevent the intervenor from prejudicing the trial of the action. *See Landrum v. National Union Ins. Co.,* 912 P.2d 324, 328 (Okla.1996). The fact that an intervenor is a real party in interest does not deprive the district court of its right, and obligation, to decide whether the intervenor's participation in plaintiff's jury trial might prejudice the plaintiff. *Id.* at 328–29. In most cases, insurance coverage under a workers' compensation act has no place in the pleadings or the evidence. *See Gorrell v. Kansas Power & Light Co.,* 189 Kan. 374, 369 P.2d 342, 345 (1962). Usually, an intervenor's only interest is in any recovery made and does not concern the issues between plaintiff and defendant. *See Foveaux,* 843 P.2d at 289; *see generally Ahlers v. EMCASCO Ins. Co.,* 548 N.W.2d 892 (Iowa 1996).

Bride also argues that the district court should not have advised the jury as to the status of the workers' compensation benefits. In *Schonberger v. Roberts,* 456 N.W.2d 201 (Iowa 1990), we recognized that even under Iowa's Comparative Fault Act, specifically Iowa Code section 668.14, evidence of payment of medical bills and other workers' compensation benefits is inadmissable provided the indemnification requirements of section 85.22 are satisfied. *Schonberger,* 456 N.W.2d at 203. The only conceivable purpose of informing the jury of such benefits is to invite the jury to reduce plaintiff's recovery because of them. *Id.* The *Schonberger* decision also modifies *Price,* which stated that the intervenor should be identified to the jury as having paid money to plaintiff under the workers' compensation act. *See Price,* 255 Iowa at 320, 122 N.W.2d at 322.

On remand, the district court should protect Bride's right to control the litigation. Generally, an intervening workers' compensation carrier should not participate in an action brought by an injured employee against a third-party tortfeasor.

IV. *Law Firm's Prior Representation of District Court Judge.*

Bride also claims the district court judge violated Canon 3(D)(1) of our Code of Judicial Conduct in failing to disclose his prior representation by a member of defense counsel's law firm. This representation, which Bride did not discover until his trial was completed, occurred less than two years before the trial. Bride argues that, had he known this before the trial, he would have requested a recusal based on a conflict of interest and ethical considerations.

Canon 3(D)(1) provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." It is a constitutional right to have a neutral and detached judge. *State v. Mann,* 512 N.W.2d 528, 532 (Iowa 1994). In determining whether to recuse himself or herself, the judge must ask whether a reasonable person would question the judge's impartiality. *Id.*

The precise issue in this case is not whether the district court judge was obligated to disqualify himself; rather, the issue is whether the judge should have disclosed the information to the parties to give them an opportunity to request that he step aside. *See Forsmark v. State,* 349 N.W.2d 763, 767–68 (Iowa 1984). Bride never had the opportunity to ask the judge to disqualify himself. The judge should have known that, based on his recent, prior representation by defense counsel's law firm, a party in plaintiff's position might question his impartiality. The judge's failure to disclose the information deprived Bride of the opportunity to make a timely request for disqualification under Canon 3(D)(1).

V. *Conclusion.*

We hold it was error for the district court to instruct the jury on the borrowed servant doctrine and for the district court judge to fail to disclose his prior representation by defense counsel's law firm. We direct the court to exercise its discretion to protect Bride's right to control participation of the intervenor. We have considered other arguments raised by the parties and find them to be without merit. We reverse and remand.

**REVERSED AND REMANDED.**